**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| BRUNO CHIMA, | : | |
| Plaintiff, | : | CIVIL CASE NO. |
| | : | 3:21-CV-00801 (JCH) |
| v. | : | |
| | : | |
| KX TECHNOLOGIES, LLC, | : | |
| Defendant. | : | FEBRUARY 28, 2022 |
| | : | |

**RULING ON DEFENDANT'S MOTION TO DISMISS (DOC. NO. 13)**

**I.    INTRODUCTION**

Plaintiff Bruno Chima brings this action against defendant KX Technologies, LLC, alleging that he was denied the option to work remotely and "constructively discharged/forced to resign from his employment" on account of his race.  Third Revised Compl. at 1-2 ("Compl.") (Doc. No. 1-1).[1]

Chima alleges eight Counts in his Complaint.  KX Technologies has moved to dismiss three of them: the Count Five hostile work environment claim; the Count Seven intentional infliction of emotional distress ("IIED") claim; and the Count Eight negligent infliction of emotional distress ("NIED") claim.  See Mot. to Dismiss (Doc. No. 13); Mem. of Law in Supp. of Def.'s Mot. to Dismiss ("Def.'s Mem.") (Doc. No. 13-1).  Chima opposes this Motion.  See Mem. of Law in Supp. of Pl.'s Objection to Def.'s Mot. to Dismiss ("Pl.'s Mem.") (Doc. No. 18-1).

For the reasons discussed below, the court grants the Motion to Dismiss.

---

[1] This case was initially filed in state court and was removed to federal court on June 14, 2021.  See Notice of Removal (Doc. No. 1).  The operative Complaint is the Third Revised Complaint from state court, which can be found beginning at page 203 of Exhibit A to the Notice of Removal.  Because the paragraphs in the operative Complaint restart at one in every Count, the court cites to the page numbers in that Complaint.

II.    **PROCEDURAL HISTORY AND ALLEGED FACTS**

Plaintiff Chima first filed this action in Connecticut Superior Court on January 25,

2021.  See Ex. A to Notice of Removal at 4 (Doc. No. 1-1).  After amending his

Complaint once, Chima filed a Third Revised Complaint on May 20, 2021, and for the

first time brought counts against KX Technologies arising under federal law.  See

Compl. at 3, 8.  Defendants proceeded to notice the removal of the case to this court.

Plaintiff Chima "is an African American man."  Id. at 1.  In Counts Five, Seven,

and Eight, he alleges that he was employed by KX Technologies as a design engineer

from October 8, 2018, until February 7, 2020.  Id. at 10.  On February 7, 2020, Chima

"was forced to resign and/or constructively discharged by [KX Technologies]" after the

company "refused to accommodate and extend the option to work remotely . . . for just a

limited time due to a family emergency."  Id.  According to Chima, KX Technologies

"normally extended this option to and/or approved of or offered [it] to" at least three

similarly situated "co-employees [of Chima] who were white."  Id. at 10-11.  Chima

further alleges that he "was constructively discharged/forced to resign . . . under a pre-

text" after upper management at KX Technologies refused to accommodate his request

to work remotely; that the real reason for his termination was his "race and color"; and

that he was then "replaced with Caucasian employees."  Id. at 11, 15.

Chima also alleges that, during his time at KX Technologies, he was "harassed

. . . because of [his] race and color", which created a hostile work environment.  Id. at

11.  This discrimination, harassment, and the ultimate termination of his employment

caused Chima to suffer "embarrassment, fear, pain, humiliation, stress, anxiety,

emotional distress and physical health problems, and a permanent impairment to his

income potential and lost wages."  Id. at 15.  However, outside of the allegations

2

regarding the termination of his employment after he was refused the option to work remotely, Chima does not allege any other specific incidents of harassment or discrimination in the counts KX Technologies has moved to dismiss.

## III.   STANDARD OF REVIEW

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.  Reviewing a motion to dismiss under Rule 12(b)(6), the court liberally construes the claims, accepts the factual allegations in a Complaint as true, and draws all reasonable inferences in the non-movant's favor.  See La Liberte v. Reid, 966 F.3d 79, 85 (2d Cir. 2020).  However, the court does not credit legal conclusions or "[t]hreadbare recitals of the elements of a cause of action."  Iqbal, 556 U.S. at 678.

## IV.   ANALYSIS

KX Technologies has moved to dismiss Chima's Count Five hostile work environment claim, his Count Seven IIED claim, and his Count Eight NIED claim.  The court analyzes each of these claims in turn.

### A.   Hostile Work Environment

To state a claim for a hostile work environment under the Connecticut Fair Employment Practices Act, "a plaintiff must produce evidence sufficient to show that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and

create an abusive working environment."  Patino v. Birken Mfg. Co., 304 Conn. 679, 699 (2012) (internal quotations and citations omitted).  "Whether an environment is objectively hostile is determined by looking at the record as a whole and at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.  Id. (internal quotations and citations omitted).  Although Connecticut courts "are not bound by it, [they also] review federal precedent concerning employment discrimination for guidance in enforcing [Connecticut's] own antidiscrimination statutes", including hostile work environment claims predicated on racial discrimination.  Heyward v. Judicial Dept., 178 Conn. App. 757, 765 (2017) (internal quotations and citations omitted)

Applying this standard, the Connecticut Supreme Court has observed that isolated incidents of racism that do not involve physical threats are generally not sufficient to state a claim for a hostile work environment.  See Feliciano v. Autozone, Inc., 316 Conn. 65, 85 (2015) (citing Schwapp v. Avon, 118 F.3d 106, 110-11 (2d Cir. 1997)).  As the Second Circuit has stated "'with respect to offensive slurs . . . [t]here must be more than a few isolated incidents of racial enmity . . . meaning that [i]nstead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments . . . . Thus, whether racial slurs constitute a hostile work environment typically depends upon the quantity, frequency, and severity of those slurs . . . considered cumulatively in order to obtain a realistic view of the work environment.'"  Id. (quoting Schwapp, 118 F.3d at 110-11).

Here, accepting the allegations Chima makes in his Complaint as true and drawing all reasonable inferences in his favor, he has failed to state a hostile work environment claim.  The sole factual allegation in Count Five of his Complaint detailing discrimination is the allegation that he was refused the option of working remotely for a limited period of time on account of his race.[2]  Compl. at 10.  That single allegation, standing alone, is insufficient to meet the requirement that the workplace be "permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the [plaintiff's] employment and create an abusive working environment."  Heyward, 178 Conn. App. at 764 (internal quotations and citations omitted).  At most, Chima has alleged a single "incident[ ] of racial enmity."  Id. at 765 (internal quotations and citations omitted).  Because Connecticut law requires a "steady barrage of opprobrious racial comments" to allege a hostile work environment claim, he has therefore fallen short of that standard.  Id. (internal quotations and citations omitted); see also id. at 765 (holding that "two instances of racial remarks . . . within a one year span do not meet the high standard of severe and pervasive").

Accordingly, the Motion to Dismiss is granted as to Chima's Count Five hostile work environment claim.

B.      Intentional Infliction of Emotional Distress

To state an IIED claim in Connecticut, a plaintiff must allege: "(1) that the [defendants] intended to inflict emotional distress or that [they] knew or should have

---

[2] To be sure, Chima does also state in a conclusory fashion that he was "subjected . . . to a hostile work environment that made it difficult for [him] to work" and that he was "harassed . . . because of [his] race and color", but he does not allege any specific facts to back up these claims.  Compl. at 10-11.  "'[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements'", however, are not sufficient to state a claim.  Nielsen v. Rabin, 746 F.3d 58, 62 (2d Cir. 2014) (quoting Iqbal, 556 U.S. at 678).

known that emotional distress was the likely result of [their] conduct; (2) that the conduct was extreme and outrageous; (3) that the [defendants'] conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff[s] was severe." Sepega v. DeLaura, 326 Conn. 788, 800 n.6 (2017) (internal quotations and citations omitted).  Meeting the "extreme and outrageous" prong of the test is a "stringent standard."  Sangan v. Yale University, No. 06-CV-587, 2006 WL 2682240, at *4 (D. Conn. Sept. 15, 2006).  It "requires conduct that . . . goes beyond all possible bounds of decency, is regarded as atrocious, is utterly intolerable in a civilized society, and is of a nature that is especially calculated to cause, and does cause, mental distress of a very serious kind."  Chase v. Nodine's Smokehouse, Inc., 360 F.Supp.3d 98, 118 (D. Conn. 2019) (internal quotations and citations omitted).

Here, defendants argue that this count should be dismissed because plaintiff has not alleged facts sufficient to meet the "extreme and outrageous" prong.  In support of their argument, they cite ample case law holding that, similar to the hostile work environment context, isolated incidents of racism, threats, or harassment are by themselves generally insufficient to state an IIED claim.  See Def.'s Mem. at 8 (citing cases).  Moreover, when a plaintiff's allegations "essentially amount to employment discrimination . . . it does not per se give rise to [an IIED] claim", even when that "employment discrimination is illegal."  Allen v. Egan, 303 F. Supp. 2d 71, 78 (D. Conn. 2004).  Stated differently, although "discrimination on the basis of a plaintiff's protected status often gives rise to a claim for IIED", the fact that such discrimination occurred does not, by itself, "establish that . . . [the] discrimination [in question was] per se extreme and outrageous."  Sangan, 2006 WL 2682240, at *5.

6

In his Complaint, Chima has alleged only that he was denied the opportunity to work remotely and then was "forced to resign and/or constructively discharge[d] due to discrimination on the basis of race."  Compl. at 1.  Although he states that he was also "discriminated against, harassed, and terminated" because of his race, he does not allege any specific facts regarding any harassment that occurred while he was working at KX Technologies.  Id. at 15.  Nor does he allege any specific instances of discrimination beyond the issue of being denied the ability to work remotely.  In sum – as Chima concedes in his Memorandum – he is arguing that defendant's refusal to allow him to work remotely for a limited period, along with his resignation or constructive discharge thereafter, are sufficient to state an IIED claim.  Pl.'s Mem. at 6.

In support of this argument, Chima does not cite to any relevant case law beyond laying out the standard for an IIED claim under Connecticut law.  Id. at 5-7.  Instead, he argues that norms regarding what counts as "utterly intolerable in a civilized society" have evolved to the point where "blatant discrimination on the basis of skin color, and/or ethnicity" now rises to that level.  Id. at 6.  The court is not unsympathetic to that argument.  However, it is obligated to apply Connecticut law here, and the Connecticut Supreme Court has been clear that "'[t]he mere act of firing an employee, even if wrongfully motivated'", is not sufficient to support an IIED claim.  Campbell v. Town of Plymouth, 74 Conn. App. 67, 78 (2002) (quoting Parsons v. United Technologies Corp., 243 Conn. 66, 89 (1997)).  Indeed, Connecticut courts generally "reject [IIED claims] in wrongful discharge actions in which the defendant's alleged conduct was more specific and egregious" than is the case here.  Id. at 79 (citing Appleton v. Board of Educ., 254 Conn. 205, 211 (2000) (denying an IIED claim where "plaintiff [was] subjected to

condescending comments in front of colleagues, two psychiatric examinations, [a] police escort from [the] workplace, [a] suspension, [and a] forced resignation"). Because Chima's claim does not allege specific instances of conduct that rise to the level of "extreme and outrageous", and because his claim alleges little more than "[t]he mere act of firing an employee" for discriminatory reasons, he has failed to meet the "stringent standard" for stating an IIED claim. Id. at 78; Sangan, 2006 WL 2682240, at *4.

The court therefore grants the Motion to Dismiss as to Chima's Count Seven IIED claim.

     C.    <u>Negligent Infliction of Emotional Distress</u>

To state a claim for NIED in Connecticut, the plaintiff must allege that: "(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress." <u>Carrol v. Allstate Ins. Co.</u>, 262 Conn. 433 (2003). However, in the employment context, "[a]n individual 'may not be found liable for [NIED] arising out of conduct occurring within a <u>continuing</u> employment context, as distinguished from conduct occurring in the <u>termination</u> of employment'", where an NIED claim may lie. <u>Grasso v. Conn. Hospice, Inc.</u>, 138 Conn. App. 759, 771 (2012) (quoting <u>Perodeau v. Hartford</u>, 259 Conn. 729, 750 (2002)) (emphasis added).

In <u>Grasso</u>, the court narrowly construed the termination requirement, holding that plaintiff could not maintain her NIED claim based on conduct by the defendant that led to the "constructive[ ] terminat[ion]" of "her employment . . . due to an inhospitable workplace." <u>Id.</u> at 772. In addition, the <u>Grasso</u> court held that "[c]onduct . . . compelling the resignation" of a plaintiff "is not itself the actual termination." <u>Id.</u> (internal quotations

8

and citations omitted).  Despite the fact that the "Connecticut Supreme Court has not specifically ruled on the temporal boundaries of the termination process", <u>Grande v. Hartford Board of Educ.</u>, No. 19-CV-00184, 2020 WL 70815, at *5 (D. Conn. Jan. 7, 2020) (internal quotations and citations omitted), courts in this District have followed the reasoning in <u>Grasso</u> to dismiss NIED claims where, as is the case here, the employee alleged that he or she had resigned or had been constructively discharged.  <u>See, e.g.,</u> <u>Sawka v. ADP, Inc.</u>, No. 13-CV-754, 2014 WL 3845238, at *5-6 (D. Conn. Aug. 5, 2014).

Here, Chima has explicitly alleged that that he was "forced to resign and/or constructively discharge[d]" from his employment at KX Technologies.  <u>Grasso</u> therefore precludes his claim, as neither resignation or constructive discharge qualify as "actual termination."  <u>Grasso</u>, 138 Conn. App. at 772.  In his Memorandum, Chima does not even respond to defendant's argument that his NIED claim should be dismissed on these grounds.  Pl.'s Mem. at 7-8.  Thus, because Chima's claim does not arise from conduct that occurred during the termination of his employment, he has failed to state a claim for NIED.

The Motion to Dismiss is therefore granted as to the Count Eight NIED claim.

**V.      CONCLUSION**

For the reasons discussed above, the Motion to Dismiss is granted.  Chima's Count Five hostile work environment claim; his Count Seven IIED claim; and his Count Eight NIED claim are all dismissed without prejudice.  Chima is granted leave to file an amended Complaint.  Should he choose to do so, the amended Complaint must be filed no later than fourteen (14) days from the date of this Ruling.

**SO ORDERED.**

Dated at New Haven, Connecticut this 28th day of February 2022.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge